UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TINA B., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 1:23-cv-00077-LEW |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal asserts that the Administrative Law Judge (ALJ) improperly relied on the testimony of medical expert Joseph Gaeta, M.D., and applied the wrong legal standard in assessing the expert opinions of record. *See* Plaintiff's Brief (ECF No. 9) at 7-19.  I discern no reversible error and, accordingly, recommend that the Court affirm the Commissioner's decision.

I.  Background

This case returns to this Court after the Court vacated a prior decision of the Commissioner denying benefits and remanded the matter for further proceedings. *See* Record at 771.  Following that remand, a different ALJ found that since September 23, 2013, the Plaintiff's alleged onset date of disability, she had severe impairments of degenerative disc disease, bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and alcohol use disorder, and since 2018, had additional severe impairments of right rotator cuff tear, bilateral carpal

1

tunnel syndrome, and residuals from right ankle fracture with arthritis of the foot. *See id.* at 775. He concluded that prior to June 18, 2019, the Plaintiff retained the residual functional capacity (RFC) to perform work existing in significant numbers in the national economy and therefore was not disabled. *See id.* at 779, 792-94. However, he found that she was disabled as of June 18, 2019, based on a further erosion of her mental health functioning. *See id.* at 790, 792, 794. He noted that she did not qualify for SSD benefits because she was not disabled at any time through her date last insured for those benefits, March 31, 2016. *See id.* at 774, 794. The Appeals Council declined to assume jurisdiction of the case following remand, *id.* at 760-64, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a), (b)(2), 416.1484(a), (b)(2).

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## II. Discussion

### A. Challenge to ALJ's Reliance on Gaeta Testimony

In assessing the Plaintiff's physical RFC for the entire period at issue, the ALJ afforded great weight to the opinion of Dr. Gaeta, who testified at the Plaintiff's hearing on June 9, 2020. *See* Record at 779, 790. The Plaintiff challenges the ALJ's reliance on Dr. Gaeta's testimony that the Plaintiff had no manipulative limitations, arguing that "Dr. Gaeta apparently missed significant portions of the record or read them out of context, thus his opinion is not supported by the record." Plaintiff's Brief at 9.

The bulk of this argument amounts to an unavailing invitation to the Court to reweigh the evidence and substitute its judgment for that of an expert that the Plaintiff's carpal tunnel syndrome imposed no functional limitations. *Compare id.* at 9-12 *with* Record at 869-74 (Gaeta testimony); *see Nathaniel-Bishop W.B. v. Kijakazi*, No. 1:20-cv-00323-JAW, 2021 WL 4147245, at *4 (D. Me. Sept. 12, 2021) (rec. dec.) (declining to second-guess the opinions of agency nonexamining doctors where their opinions were not facially inconsistent with the record and noting that courts generally lack the expertise to second-guess the opinions of medical experts), *aff'd*, 2021 WL 5750391 (D. Me. Dec. 2, 2021); *Becky K. G. v. Saul*, No. 1:20-cv-00089-GZS, 2020 WL 7418974, at *5 (D. Me. Dec. 17, 2020) (rec. dec.) ("That the record could arguably support a different conclusion does not entitle [a claimant] to remand; it is

3

for the ALJ, not the court, to draw conclusions from the evidence and to resolve any conflicts therein."), *aff'd*, 2021 WL 66609 (D. Me. Jan. 7, 2021).

However, the Plaintiff has one more string to her bow: that six months after Dr. Gaeta testified, she had surgery to alleviate symptoms of carpal tunnel syndrome and DeQuervain's tenosynovitis, and the ALJ did not "even attempt to weigh" the import of that development in crediting the Gaeta testimony and discrediting other experts' assessment of manipulative limitations. Plaintiff's Brief at 12-13; Plaintiff's Reply (ECF No. 12) at 5. She cites *Ormon v. Astrue*, 497 F. App'x 81 (1st Cir. 2012) for the proposition that "it was improbable that [the Plaintiff's] physicians would have, in this case, performed surgery and other treatment for her if they had believed that she did not have serious symptoms and limitations." Plaintiff's Brief at 12.

The Plaintiff falls short of showing that her surgery in December 2020 calls into question the ALJ's reliance on Dr. Gaeta's testimony. Dr. Gaeta testified that, although the Plaintiff had bilateral carpal tunnel syndrome, he assessed no manipulative limitations given findings of full strength and normal range of motion in her upper extremities with no radicular findings or nerve impingement. *See* Record at 870, 873-74. The Plaintiff identifies no evidence that the findings on which Dr. Gaeta relied changed prior to her surgery, *see* Plaintiff's Brief at 12-13; Plaintiff's Reply at 5, and the Commissioner cites evidence that those findings did not change, *see* Commissioner's Brief (ECF No. 11) at 4-6. Moreover, as counsel for the Commissioner noted at oral argument, because the ALJ found the Plaintiff disabled based on worsening mental health as of June 18, 2019, *see* Record at 794, as a

4

practical matter, the Plaintiff would have to show that her December 2020 surgery supports a worsening of her physical condition before June 18, 2019. She has not done so.

### B. Challenge to ALJ's Weighing of Other Expert Opinions

The Plaintiff next contends that the ALJ violated the so-called "mandate rule" when he failed to follow the directive of the Appeals Council on remand to apply rules for evaluating expert opinions pertaining to applications filed prior to March 27, 2017 (the "old rules"), instead applying rules governing applications filed on or after March 27, 2017 (the "new rules"). *See* Plaintiff's Brief at 13-19. I am unpersuaded.

The old rules list factors relevant to "deciding the weight we give to any medical opinion" when "controlling weight" is not given to a treating source's medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). By contrast, the new rules provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings." *Id*. §§ 404.1520c(a), 416.920c(a).

The Plaintiff's overarching point that the ALJ applied the wrong rules is not well-taken. While, as the Commissioner notes, *see* Commissioner's Brief at 7-8, the ALJ's decision contains boilerplate language referencing the new rules, *see* Record at 780, 786 (citing 20 C.F.R. §§ 404.1520c, 416.920c), the ALJ followed the old rules by explaining the weight he accorded to each medical opinion of record, *see id*. at 786-90.

The Plaintiff next takes issue with the ALJ's handling of specific expert opinions; however, for the reasons discussed below, I find no reversible error in those respects.

The Plaintiff asserts that the ALJ ignored the May 2017 and November 2019 "medical opinions" of Bonnie Creech, Ph.D. Plaintiff's Brief at 16; Plaintiff's Reply at 3-4. The Creech documents are reports of neuropsychological evaluations, *see* Record at 898-907, 1407-14, and the Plaintiff does not identify portions that she asserts qualify as "medical opinions" pursuant to the old rules, *see* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

In any event, as the Commissioner notes, *see* Commissioner's Brief at 10, the ALJ's finding that the Plaintiff's mental impairments were disabling as of June 28, 2019, adequately accounts for any medical opinions in the November 2019 report, and the Plaintiff fails to show that Dr. Creech's 2017 report is inconsistent with the mental RFC that the ALJ assessed for the period prior to June 18, 2019, or that Dr. Creech's 2017 observation that the Plaintiff's right finger-tapping speed was severely impaired is a "medical opinion" rather than a clinical finding.

The Plaintiff next faults the ALJ for failing to meet the "articulation requirements" of the old rules when he gave little weight to a February 2013 opinion of agency nonexamining consultant Edward Quinn, Ph.D., solely on the basis that it

6

"constituted a snapshot" of the Plaintiff's functioning in February 2013, prior to the Plaintiff's alleged onset date of disability on September 23, 2013, and gave the opinion of Lisa Hickey, L.C.S.W., significant weight without acknowledging that she was not an "acceptable medical source" or "articulating any factors other than consistency."  Plaintiff's Brief at 16-17.  He adds that the ALJ also failed to sufficiently consider or articulate factors weighing against the adoption of the Gaeta opinion.  *See id*. at 19.

While the old rules require *consideration* of all relevant factors, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c), they require *articulation* of that consideration in three respects.  First, the ALJ "will always give good reasons . . . for the weight" given to a claimant's "treating source's medical opinion."  *Id*. §§ 404.1527(c)(2), 416.927(c)(2).  Second, the ALJ "generally should explain the weight given to opinions from providers" who are not acceptable medical sources "or otherwise ensure that the discussion of the evidence" allows the reader to follow the ALJ's reasoning "when such opinions may have an effect on the outcome of the case."  Finally, the ALJ "must explain the reasons" for giving the opinion of a provider who is "not an acceptable medical source"—such as Ms. Hickey, a social worker—"greater weight than a medical opinion from a treating source," *id*. §§ 404.1527(f)(2); 416.927(f)(2).

Drs. Quinn and Gaeta are neither treating sources nor providers who are not acceptable medical sources.  Nonetheless, the ALJ explained the weight accorded their opinions.  *See* Record at 786, 790.  He also detailed several reasons why he accorded the Hickey opinion significant weight, including its consistency of the

7

opinion with LCSW Hickey's notes and the record as a whole and the thoughtfulness of her analysis. *See id*. at 786. No more was required.

The Plaintiff, finally, asserts that the ALJ failed to accord controlling weight to the opinion of her primary care physician, Rosalind Waldren, M.D., and proper weight to the opinions of agency nonexamining consultants Richard Chamberlin, M.D., and J.H. Hall, M.D. *See* Plaintiff's Brief at 17-18; Record at 787-89. This argument on its face invites the Court to reweigh the evidence.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: February 7, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge